UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DUSTIN M. JAMES,

    Plaintiff,

v.

DEBRA HALE, *et al.*,

    Defendants.

Case No. 3:15-cv-01335-JPG-MAB

## MEMORANDUM AND ORDER

**J. PHIL GILBERT, DISTRICT JUDGE**

As Magistrate Judge Mark A. Beatty has already correctly recounted (*see generally* ECF No. 135, pp 1–5), plaintiff Dustin James was formerly a pre-trial detainee at the St. Clair County Jail. At some point during his detention, he broke a bone in his face and received some sort of laceration. So the jail sent him to the emergency room at local hospital where they sewed up the cut, performed a CT scan, and referred him to an ENT and ophthalmologist. And over the next month, James continued to receive treatment from both the jail's infirmary and outside specialists for his injury.

But at some point, James developed further pain and swelling on one side of his face that allegedly was so bad that he could not chew solid food, so he asked to see defendant Debra Hale—a supervisory nurse and the only remaining defendant in this case—and demanded (1) some ibuprofen, and (2) that Hale send James to the emergency room for further treatment. But Hale declined to do so, on the grounds that (1) James was already scheduled to see an outside specialist the next day who would address the concern, and (2) in her medical judgment, James's condition was not sufficiently serious enough to warrant an immediate trip to the emergency room.

1

When James went to the specialist the next day—a Friday—that specialist diagnosed James with an infection. The specialist then left a voicemail for the jail at 6:43 PM that night, in which he recommended that the jail put James on an antibiotic for ten days to alleviate the infection. But since Hale only worked day shifts Monday through Friday, she did not receive the voicemail that night. Regardless, the jail placed James on antibiotics that following Monday.

For that, James sued Hale under 42 U.S.C. § 1983 for an alleged violation of the Eighth Amendment's Cruel and Unusual Punishment Clause, along with a Due Process claim relating to his subsequent confinement in "max" that James now admits Hale is not liable for. Hale moved for summary judgment, and following briefing on the matter, Magistrate Judge Beatty issued a Report and Recommendation ("Report") pursuant to 28 U.S.C. § 636(b)(1)(B) that advises this Court to grant Hale's motion for summary judgment. Now, the Court may accept, reject, or modify—in whole or in part—the findings or recommendations of the magistrate judge in his Report. FED. R. CIV. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

James—represented by counsel—has filed an objection, so the Court has reviewed the matter *de novo*. The Court fully adopts Magistrate Judge Beatty's thoughtful analysis of the merits of this case, but with one exception: James's central objection that permeates most of his arguments—that the magistrate judge improperly disregarded facts that James had supported with a sworn affidavit—is correct. After James filed his response to the motion for summary judgment, James asked the Court for leave to file two affidavits that transformed his amended complaint into a sworn, verified complaint that may be used in evidence—and the magistrate judge formerly

assigned to this case granted that request. *See Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996) (explaining the procedure to transform an operative complaint into a verified complaint). James then relied heavily on that verified complaint to try to defeat summary judgment in this case, rather than relying on citations to evidence previously in the record like depositions, interrogatories, and the like. The magistrate judge then declined to consider the sworn complaint as evidence because it is not the Court's function to "scour the record in search of evidence to defeat a motion for summary judgment." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). Pursuant to *Ford*, that was in error.

But that error does not change anything, for the verified complaint fails as evidence for another reason. James—through counsel, which he has had in this case throughout the discovery phase—relied on two affidavits to transform his amended complaint into a verified complaint: one from himself and another from his mother. The problem for James, however, is that you cannot create a "sham affidavit"—one "whose conclusions contradict prior deposition or other sworn testimony"—to evade a loss at summary judgment. *Dunn v. Menard, Inc.*, 880 F.3d 899, 910 (7th Cir. 2018) (quoting *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996)). And that is exactly what James tried to do here. His recently-filed affidavit certifies his statements in the amended complaint as true, but now those proposed "facts" blatantly contradict both sworn deposition testimony as well as the medical records in this case—making the affidavits a desperate attempt to evade an inevitable loss at summary judgment rather than offering any genuine dispute over the material facts in this case.

For example, ¶¶ 6–17 of James's statement of material facts explain the medical procedures in this case, but they all cite exclusively to the verified complaint as evidence. (Def.'s Response to Pl.'s Mot. Summ. J., ECF No. 126, pp. 9–11.) As the defendant points out in their reply brief,

nearly every single one of these assertions contradicts the medical records and depositions in this case. (ECF No. 132, pp. 2–17.) And ¶ 43 of James's statement of facts states that plaintiff was released from custody at the St. Clair County Jail on March 1, 2015, citing to the verified complaint as evidence of that. (Def.'s Response to Pl.'s Mot. Summ. J., ECF No. 126, p. 15.) The dates in this case are important, as Magistrate Judge Beatty explained in his Report. But James's assertion is simply wrong: the jail actually released James on or around February 24, 2015, and the records in this case show that. (ECF No. 117-1.) And finally, to the extent that the affidavit from James's mother tries to verifiy the amended complaint, it fails—her affidavit contains no specific dates or factual contentions against defendant Hale, and instead relies on a vague assertion that she contacted the jail and spoke to Ms. Hale regarding her son's medical treatment at some time. Both of these affidavits are as sham affidavits, so the fact that Magistrate Judge Beatty refused to rely on them is acceptable.

Moreover, James has had counsel in this case since the summer of 2017. Counsel filed the affidavit in-question around Christmas of 2018, which transformed the operative complaint into a verified complaint. Even though this was technically permissible under *Ford*, the Court certainly does not commend the practice. *Ford* dealt with a pro se plaintiff, and the Seventh Circuit panel in that case cited to that fact when allowing the plaintiff to get away with what he did. 90 F.3d at 247. Even so, the panel stated: "We do not mean to commend the practice. The federal rules envisage the submission of evidentiary material in response to a motion for summary judgment as a means of sharpening the issues, so that the judge can determine just what if anything must be tried." *Id.* While this Court is bound to follow *Ford* at this time, the Court has doubts as to whether plaintiffs whom are represented by counsel should be permitted to deploy it to their advantage—especially in scenarios like this case. Allowing a plaintiff's attorney to take advantage of such a practice

makes a mockery of how summary judgment is supposed to work and is extremely prejudicial to the defense. Perhaps that rule should change.

To conclude, the Court has also reviewed the matter regarding Dr. Angarone's expert testimony *de novo* and finds that Magistrate Judge Beatty was correct. The Report specifically held that "[e]ven when considering Dr. Angarone's expert opinion…[t]he record clearly indicates that Defendant Hale did not act purposefully, knowingly or recklessly regarding Plaintiff's health while he was detained at [the jail], and that her conduct was objectively reasonable." (ECF No. 135, p. 9.) James objected to this on the grounds that he offered Dr. Angarone as a causation expert instead of a standard-of-care expert, that changes nothing. Magistrate Judge Beatty found that there was no evidence in this case that defendant Hale had the mental state required for deliberate indifference, and even if Dr. Angarone—the plaintiff's expert—is only here to assist on causation, that does not affect the mental-state analysis that Magistrate Judge Beatty correctly decided.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** Magistrate Judge Beatty's Report (ECF No. 135) as supplemented by this order, **GRANTS** the defendant's motion to dismiss (ECF No. 116), **DISMISSES** this case **WITH PREJUDICE**, and **FINDS AS MOOT** all other motions herein. The Court **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: APRIL 1, 2019**

<u>s/ *J. Phil Gilbert*</u>
**J. PHIL GILBERT**
**U.S. DISTRICT JUDGE**